Eric G. Maxfield (8668)
Darren G. Reid (11163)
Brandon T. Christensen (16420)
HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, Utah 84101
Telephone: (801) 799-5800
Facsimile: (801) 799-5700
egmaxfield@hollandhart.com
dgreid@hollandhart.com
btchristensen@hollandhart.com
*Attorneys for Defendant*

# IN THE UNITED STATES DISTRICTCOURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TREVOR MILTON;<br><br>    Plaintiff,<br><br>vs.<br><br>DAVID BATEMAN;<br><br>    Defendant. | **REPLY IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS**<br><br>Case No. 2:20-cv-00700-HCN-DBP<br><br>Judge Howard C. Nielson, Jr.<br>Magistrate Judge Dustin Pead |

## INTRODUCTION

Milton has spent years cultivating a public image as a business leader of integrity and trustworthiness. He has gone to substantial measures to protect that reputation, including having his former best friend, Jonny Robb, arrested. In the wake of scandalous revelations about the "intricate fraud" perpetuated by Milton's public company, Nikola, and the corresponding public controversy surrounding his connection to Robb's death, Milton voluntarily gave an interview to the Whole Mars Blog. In that interview, published on Twitter, he injected his version of Robb's arrest and death into the public eye. Bateman stepped in to defend Robb's reputation and expose Milton's lies on Twitter, and this lawsuit to silence his speech is the result.

Milton asks the Court to completely disregard the undisputed and critical context surrounding Bateman's tweets and examine only the barebone elements asserted in his Complaint. The law requires an examination of the context, which is directly referenced in Milton's own Complaint, can be readily determined from the articles and tweets Bateman cites, and is not subject to reasonable dispute. As explained here, and in light of that context, Milton fails to state a claim for defamation *per se* or public disclosure of private facts.

## ARGUMENT

**I. THE COURT SHOULD CONSIDER THE MOTION'S CITED MATERIALS, WHICH PROVIDE NECESSARY CONTEXT FOR BATEMAN'S TWEETS.**

Milton does not deny that context is essential for evaluating whether a statement is defamatory. Opp'n at 4.[1] Instead, he argues that the Court must ignore that critical context until

---

[1] *See also O'Connor v. Burningham*, 2007 UT 58, ¶ 26, 165 P.3d 1214, 1222 ("Because the existence of defamatory content is a matter of law, a reviewing court can, and must, conduct a context-driven assessment…and reach an independent conclusion about the statement's susceptibility to a defamatory interpretation."); *Spencer v. Glover*, 2017 UT App 69, ¶ 9, 397 P.3d 780, 784 (evaluating "the full context of the statement—for example, the entire article or column" and "the broader setting in which the statement appears").

summary judgment. Milton is wrong. In defamation cases, Utah courts "depart[] from the standard treatment" and "alter[] [their] customary rules of review by denying a nonmoving party the benefit of a favorable interpretation of factual inferences." *O'Connor*, 2007 UT 58, ¶ 27. This shift in the standard of review, made in deference to the First Amendment, is not limited to summary judgment. *West v. Thomson Newspapers,* 872 P.2d 999, 1008-09 (Utah 1994) (upholding motion to dismiss defamation claim where statement was "not capable of sustaining a defamatory meaning" in "the context in which the statement was made"); *Spencer*, 397 P.3d 780, 783-84 (upholding motion to dismiss defamation claim where online review "was an expression of opinion protected by the Utah Constitution"). On the contrary, where the context can be readily determined from undisputed facts incorporated into and referenced in the Complaint, and from facts subject to judicial notice, the Court can determine defamatory content as a matter of law on a motion to dismiss. Opp'n at 4-5.

The Motion cites several categories of materials to show the context of Bateman's tweets: (i) news articles and videos regarding Milton and Nikola; (ii) the affidavit for probable cause against Robb;[2] and (iii) tweets and other social media posts surrounding Bateman's tweets referenced in the Complaint. Milton challenges the first category because "Defendant provides no explanation of whether the contents of those articles are accurate, and the allegations contained within the articles are in dispute." Opp. at 5. But Bateman cites to these articles for the fact of their existence—not for the truth of their contents—which is not subject to reasonable dispute.[3] The articles show that before Bateman's tweets there already existed a public

---

[2] Milton does not oppose consideration of the affidavit for probable cause, which was cited and quoted in the Complaint. Mot. at 6, n. 11 (citing Compl. ¶ 11).
[3] *Prodanova v. H.C. Wainwright & Co., LLC*, No. LA CV17-07926 JAK (ASx), 2018 U.S. Dist. LEXIS 225334, at *7-8 (C.D. Cal. Dec. 11, 2018) ("[C]ourts may take judicial notice of

2

controversy surrounding and legitimate public interest in Milton's personal character, connection to Robb's death, and sexual misconduct (which Robb had threatened to reveal). Bateman's tweets were expressly made in response to that existing controversy and public interest.

Milton challenges the third category of tweets and other social media posts because "Defendant provides no support for why this extrinsic evidence is appropriate or properly considered on a Rule 12(b)(6) motion." Opp'n at 6. But the Court cannot evaluate defamatory content without considering each statement's context. Such context is especially critical here because Twitter limits each tweet's length, which "encourages users to post multiple times in a short period." *Ganske v. Mensch*, No. 19-CV-6943 (RA), 2020 U.S. Dist. LEXIS 151152, at *19 (S.D.N.Y. Aug. 20, 2020). Milton cannot cherry-pick a few isolated tweets and, by artful drafting of the Complaint, exclude their relevant context, including the tweets that precede, follow, and surround Bateman's tweets at issue (the equivalent of the "entire article or column" in this context). *Spencer*, 397 P.3d at 784. The existence of that context and its nature is not subject to reasonable factual dispute, nor does Milton raise such a dispute. Opp'n at 6. The Court should therefore take judicial notice of the existence of the Motion's cited tweets and social media posts to determine as a matter of law whether Bateman's tweets are unlawful.[4]

---

publications, such as newspapers, magazines, and books, to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.") (quoting *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010)); *Sandza v. Barclays Bank PLC*, 151 F. Supp. 3d 94, 113 (D.D.C. 2015) (taking judicial notice of articles, not for their truth, but because "they contained certain information, which (true or not) should have put plaintiff on notice of the need to investigate her potential claims").

[4] Milton's request to exclude the Whole Mars Blog's tweet and the Whole Mars Interview merits special rebuttal. *See* Opp'n at 6, n.4. The Complaint alleges that "Bateman sent off a barrage of tweets and replies ***in response to*** a tweet from an account named @WholeMarsBlog, containing a link to an article about an individual named Jonny Robb." Compl. ¶ 10 (emphasis added). Milton cannot seriously argue that the Court should completely disregard that tweet and its contents, which were incorporated into the Complaint and which Milton admits were the genesis

3

## II. THE COMPLAINT FAILS TO STATE A CLAIM FOR DEFAMATION *PER SE*.

### A. Milton confuses the standard for defamation with the more stringent standard for defamation *per se*, which the Complaint fails to meet.

Milton claims the Complaint "plainly meets the[] requirements" for a defamation claim because it alleges "Defendant used Twitter to make false, malicious, and defamatory statements about Plaintiff," which impeached Milton's "honesty, integrity, virtue, or reputation" and exposed him to "hatred, contempt or ridicule." Opp'n at 8. But the Complaint does not claim defamation; it exclusively claims defamation *per se*, which requires more than allegations of mere defamation. In particular, Milton had to allege statements by Bateman that are "plainly and unambiguously" "charge[s] of criminal conduct." Mot. at 10. *See also Allred v. Cook*, 590 P.2d 318, 321 (Utah 1979) (affirming dismissal where the alleged statement was "capable of two interpretations," meaning it "cannot be slander per se"). None of Bateman's tweets are plain and unambiguous charges of criminal conduct. Mot. at 12-16.

Milton asserts this argument is "frivolous since sexual assault, sex trafficking, and pedophilia" are all "crimes." Opp'n at 9. Yet Milton does not point to a single tweet that he alleges "plainly and unambiguously" charged him with these crimes. He argues, instead, that he need only show Bateman's tweets "can reasonably be understood as implying provable facts" that "could reasonably be construed as implying" Milton committed a crime. Opp'n at 10. This is not the "plain and unambiguous" required. *Farm Bureau Life Ins. Co. v. Am. Nat'l Ins. Co.*, 505 F. Supp. 2d 1178, 1192 (D. Utah 2007) ("If a statement is capable of two interpretations, one slanderous and the other not, the statement cannot be slander *per se*."); *Johnson v. Cmty. Nursing*

---

of Bateman's tweets. *See* Opp'n at 6, n.4. The Whole Mars tweet and its contents, including the Whole Mars Interview, are central—and damning—to Milton's claims.

4

*Servs.*, 985 F. Supp. 1321, 1328 (D. Utah 1997) (same); *Hogan v. Winder*, No. 2:12-CV-123 TS, 2012 U.S. Dist. LEXIS 137399, at *36-37 (D. Utah Sep. 24, 2012) (same).

Rather than addressing Bateman's tweet-by-tweet analysis, Milton's Opposition—like his Complaint—offers only generalities, and the few examples he provides fail to show that Bateman's tweets plainly and unambiguously charge Milton with a crime. Opp'n at 8, 10 (providing six examples of tweets).[5] At most, Bateman's tweets are capable of multiple interpretations[6] and cannot constitute defamation *per se*:

- Bateman's initial tweet merely asserts that Milton lied about Robb in the Whole Mars Interview. Opp'n at 8. This is plainly not a charge of criminal conduct. Mot. at 12.

- Bateman's tweet suggesting Robb believed Milton was a "predator" is not a charge of criminal conduct, but rather an opinion about Robb's motivations. Opp'n at 8; Mot. at 11. Regardless, no reasonable reader would understand the word "predator" to be a charge of criminal conduct. Mot. at 15. *See also Spencer*, 397 P.3d at 785.

- Bateman's tweet about the potential for other women to come forward with claims about Milton is at most a suggestion of a future charge of criminal conduct by others, which is not defamation *per se*. Opp'n at 8, 10 (women were "***likely*** to come forward with Milton's attempts to traffic them.") (emphasis added); Mot. at 14.

- Bateman's tweet about a woman's allegations that Milton "groped her against her will" is plainly an opinion, not a charge of criminal conduct. Opp'n at 8. This tweet first describes the woman's allegations—"While on a work trip, Milton ***allegedly*** climbed into bed and groped her against her will"—then adds his opinion: "I believe her." Compl. ¶ 17 (emphasis added). Whether Bateman believes another person's accusations is not a charge of criminal conduct; it is merely a statement of his opinion and belief.

- Bateman's alleged statements to unknown persons at unknown times that Milton was a "pedo" is not a charge of criminal conduct because a pedophile is "an adult who is

---

[5] By failing to raise other specific tweets, Milton has waived the right to do so. The Court should therefore dismiss the Complaint to the extent it is based on tweets other than those specifically identified in the Opposition as charging Milton with criminal conduct.

[6] This is especially so given the setting of Bateman's statements, *i.e.*, the "informal and 'freewheeling' setting of the Internet, which 'conveys a strong signal to a reasonable reader that [tweets are] Defendant's opinion.'" *Ganske*, 2020 U.S. Dist. LEXIS 151152, at *13 ("Here, the context is Twitter, an Internet forum. 'New York courts have consistently protected statements made in online forums as statements of opinion rather than fact.'") (collecting cases). *See also Spencer*, 397 P.3d at 786.

sexually attracted to young children," which attraction itself is not a crime.[7] Opp'n at 9; Mot. at 11. Accordingly, such a statement—even if Bateman made it—plainly does not "directly charge Plaintiff with the crime of engaging in sexual activity with a minor." *Id.*

- Bateman's opinion that Milton's offering to pay a woman to have sex with a random person in Las Vegas was "100% harassment" is not a charge of criminal conduct. Opp'n at 10. Bateman never says "sexual assault," Opp'n at 9, but rather "harassment," which might be inappropriate in, say, an employment context, but is not *criminal*. Regardless, Bateman does not accuse Milton of harassment; he merely offers his opinion that Milton's advances were not invited or welcome.

In short, Milton fails to point to a single tweet plainly and unambiguously charging Milton with a crime. He has therefore failed to state a claim for defamation *per se*.[8]

### B. Milton is a Limited-Purpose Public Figure But Fails to Allege Actual Malice.

Milton attempts to avoid Bateman's public figure argument by hiding behind the Complaint, which he claims "does not contain any [] facts…showing either the existence of a public controversy" or Milton's role in it. Opp'n at 12. But as explained above, Milton cannot avoid the readily available context of Bateman's tweets through artful drafting of the Complaint. *McKee v. Cosby*, 874 F.3d 54, 62 (1st Cir. 2017) (affirming dismissal of defamation claim where plaintiff sought to influence the outcome of a controversy and thereby became a limited-purpose public figure); *Yeager v. Nat'l Pub. Radio*, No. 18-4019-SAC-GEB, 2018 U.S. Dist. LEXIS 192047, at *12 (D. Kan. Nov. 9, 2018) (granting motion to dismiss in part where limited-purpose plaintiff failed to allege facts plausibly showing actual malice).

Milton next argues that the Hindenburg report and the resulting intense public scrutiny of Milton "has no relevance here, since it has nothing to do with the subject of [Bateman's] defamatory tweets." Opp'n at 14, n.9. But Bateman's tweets concerned Milton's integrity, and

---

[7] "Pedophile," Dictionary.com, https://www.dictionary.com/browse/pedophile.
[8] Milton's "defamation-by-implication" theory also fails because the Complaint does not "allege facts sufficient to show that [Bateman] intended the [alleged] implication[s]." *Hogan*, 2012 U.S. Dist. LEXIS 137399, at *26-27.

6

Milton does not dispute that his character was a matter of public concern in the Hindenburg report's wake. Moreover, that report led directly to public questions about Milton's connection to Robb's death and his character days before Bateman's first tweet. Mot. at 5. In response to these public controversies, Milton *affirmatively* offered public statements about Robb in an interview with the Whole Mars Blog,[9] and his own Complaint agrees that this interview was the genesis for Bateman's tweets. Compl. ¶ 10 ("Bateman sent off a barrage of tweets and replies ***in response to*** a tweet from an account named @WholeMarsBlog," which linked to the Whole Mars interview and cited to the KSL.com story); Mot. at 6, n.12. Bateman's tweets thus directly related to the Hindenburg scandal, Milton's character, the Whole Mars interview, and Robb's death. These public controversies had significant ramifications for many people, including the women Milton allegedly harmed and investors in Milton's company.[10]

Milton next argues that he did not "voluntarily expose[] [himself] to increased risk of injury from defamatory falsehood" because he did not take "affirmative steps" to "draw attention to himself in order to invite public comment or influence the public." Opp'n at 15; Mot. at 20. But Milton does not deny his statements about Robb in the Whole Mars interview were voluntary and came on the heels of the Hindenburg report and its attending controversy about Milton's character and Robb's death. Mot. at 20-21. Nor does he deny more generally his

---

[9] Milton brushes the interview aside because it "makes no mention of sexual assault allegations." Opp'n at 14. That is precisely the point: Milton affirmatively injected his false version of events about Robb into the public eye, and Bateman's tweets rebutted Milton's story. Indeed, the KSL.com story Whole Mars cited specifically referred to "***texts" between Milton and a "female" that Robb threatened to release***, and it is these types of texts that Bateman tweeted in response to Whole Mars. Mot. at 19, n.25.
[10] Milton effectively admits a controversy existed by arguing that his Whole Mars interview was "in response to a question from the interviewer regarding ***rumors about Robb***." Opp'n at 16 (emphasis added).

substantial efforts to build a public company, his self-promotion as one worthy of investment, or his significant social media and news presence. *Id.* This is precisely the kind of "voluntary exposure" that creates a limited-purpose public figure and invites public scrutiny. *SCO Grp., Inc. v. Novell, Inc.*, 692 F. Supp. 2d 1287, 1296 (D. Utah 2010) (plaintiff "thrust itself to the forefront of the controversy" by making "a number of public statements, through press releases and other means, and actively s[eeking] media coverage to air its position on these issues").[11] Milton cannot now complain that his efforts led to unwanted publicity and a public rebuttal.[12]

With respect to the requirement of actual malice, the Complaint only alleges Bateman's actions were "malevolent," "malicious," and "driven by some personal animus," but not that Bateman "knew" his statements were false or acted with "reckless disregard" for their truth,

---

[11] Milton's cited cases are inapposite. First, courts find limited-purpose public figures even when plaintiffs are "drawn into a particular public controversy" and "participate" in that controversy. *Gertz v. Robert Welch*, 418 U.S. 323, 351 (1974) (a public figure either "voluntarily injects himself or is drawn into a particular public controversy"); *Schwartz v. Am. Coll. of Emergency Physicians*, 215 F.3d 1140, 1145 (10th Cir. 2000) (same); *Yeager*, 2018 U.S. Dist. LEXIS 192047, at *12 (same, and defining the scope of the public figure "by their 'participation in the particular controversy giving rise to the defamation'"). Moreover, unlike *Diamond Ranch*, where the Court emphasized plaintiff's "relatively finite set of media coverage" and "public exposure," Milton has dedicated substantial efforts to his personal image of trustworthiness and character. Opp'n at 16-17. *See, e.g.*, the KSL.com article, which showcases Milton's public relations efforts regarding his own character. Mot. at 19, n.25. Unlike *Calvin Klein*, where plaintiff issued general denials of defamatory allegations, Milton went beyond a general denial and injected his own (false) story about his and Robb's actions. Opp'n at 17. And unlike *Wayment*, where plaintiff did not take affirmative steps to influence the public's opinion on her firing, Milton has taken affirmative steps—including the Whole Mars interview—to influence public opinion on both his trustworthiness and his purportedly innocent role in Robb's death. Opp'n at 17.

[12] Milton's extensive social media and public presence emphasize his status as a public figure. *See Gertz*, 418 U.S. at 344 ("[P]ublic figures usually enjoy significantly greater access to the channels of effective communication and hence have a more realistic opportunity to counteract false statements than private individuals normally enjoy. Private individuals are therefore more vulnerable to injury, and the state interest in protecting them is correspondingly greater."); Mot. at 20, n.26 (Milton had 100,000 Twitter followers in 09/2020).

much less plausible, non-conclusory allegations of such knowledge, which is the standard. Opp'n at 17; *World Wide Ass'n of Specialty Programs v. Pure, Inc.*, 450 F.3d 1132, 1136 (10th Cir. 2006); *Allred*, 590 P.2d at 322 (rejecting conclusory actual malice allegations based on defendants' motive to harm plaintiff). Accordingly, the claim fails.

### III. THE COMPLAINT'S PUBLICATION OF PRIVATE FACTS CLAIM FAILS.

Foremost, Milton's Opposition concedes that most of Bateman's tweets did not disclose any private facts. Opp'n at 20-21 (discussing only tweets that attached screenshots). The Court should therefore dismiss Milton's claim to the extent it is based on Bateman's other tweets. Moreover, Bateman shared the foregoing text conversations with each woman's permission. *Dineen v. Dep't of Soc. Servs.*, 11 Mass. L. Rep. 184 (2000) ("Consent is an absolute defense to a claim for invasion of privacy."). Milton has no reasonable expectation of privacy when one party to the conversation has consented to its release.[13] *Mangino v. Dep't of the Army*, No. 94-2067-EEO, 1994 U.S. Dist. LEXIS 12313, at *24 (D. Kan. Aug. 24, 1994). These conversations were therefore not "private facts" and their disclosure was lawful.

Milton next argues his misrepresentations about Robb and harmful treatment of women are not "of legitimate public concern" because there is no "logical nexus" between those issues and Bateman's tweets. Opp'n at 18-19. Not so. Milton's character is squarely of public concern due to shocking fraud allegations, and Bateman's tweets reveal Milton's character in his personal life by rebutting his publicly shared version of events about Robb. Milton's character is in the public eye, with a straightforward nexus between Milton's character in his business life and in his personal life. *Lee v. Calhoun*, 948 F.2d 1162, 1166 (10th Cir. 1991) (disclosure of AIDS diagnosis sufficiently related to malpractice lawsuit to "prevent [such disclosure] from serving as

---

[13] *See* Utah Code Ann. § 77-23a-4(7) (permitting recording by a party to a conversation).

9

the basis for an invasion of privacy claim"); *Gilbert v. Med. Econ. Co.*, 665 F.2d 305, 308 (10th Cir. 1981) ("substantial relevance" between medical malpractice and plaintiff's photograph, name, and psychiatric and marital problems).

Milton disregards the Whole Mars interview because it did not "mention[] sexual misconduct allegations" against him. Opp'n at 20. But again, where Milton affirmatively injected his version of events into the public eye, he cannot complain that Bateman rebutted his misrepresentations. Indeed, the Whole Mars reporter's decision to ask about Robb—and Milton's decision to answer—show legitimate public interest in the subject matter. Each fact in Bateman's tweets rebutted Milton's claims about Robb and related to Milton's character for truthfulness (or lack thereof). Indeed, Bateman's string of tweets began "Because my dear friend Jonny isn't here to defend himself" and ended with "RIP Jonny." Mot. at 21.

Finally, Milton argues disclosures regarding sexual conduct are *per se* offensive. Opp'n at 21. But such disclosures must be both highly offensive and *objectionable*, *i.e.*, without justification. Mot. at 25. Here, where there is legitimate public interest in Milton's character and Robb's death—and in the broader #MeToo movement—it is not objectionable to a reasonable person to rebut Milton's public story about his sexual misconduct and state opinions about it on Twitter. Milton's cited cases on this point are inapposite.[14] His invasion of privacy claim fails.

## **CONCLUSION**

Milton's attempt to silence Bateman's protected speech is troubling and misguided, and the Motion to Dismiss should be granted.

---

[14] In *Kennedy*, the court allowed allegations of disclosure of a sexual relationship to survive summary judgment but did not address at all whether such a disclosure was "highly offensive" or address the separate element of "objectionability," which is not required under D.C. law. Opp'n at 21. And—critically—neither *Kennedy*, *Michaels*, nor *Hofstetter* addressed allegations of sexual misconduct. *Id.*

DATED this 11th day of December, 2020.

**HOLLAND & HART, LLP**

/s/ Darren G. Reid
Eric G. Maxfield
Darren G. Reid
Brandon T. Christensen
*Attorneys for Defendant*

15792239_v6